**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-16-0000848**
**30-SEP-2019**
**07:57 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

JERRY M. HIATT, Plaintiff-Appellee, v.
SHERMAN WILLIAMS, TIFFANY WILLIAMS, and KONA SUNSET
POOLS & SPAS, LLC, a Domestic Limited Liability
Company, Defendants-Appellees, and
CONTRACTORS LICENSE BOARD, Intervenor-Appellant

NO. CAAP-16-0000848

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 15-1-068K)

SEPTEMBER 30, 2019

GINOZA, CHIEF JUDGE, LEONARD AND HIRAOKA, JJ.

OPINION OF THE COURT BY LEONARD, J.

Plaintiff-Appellee Jerry M. Hiatt (**Hiatt**) obtained a judgment against a licenced contractor who performed defective work at Hiatt's residence. After Hiatt unsuccessfully tried to collect on the judgment, he applied for payment from the Contractors Recovery Fund (the **Fund**), but objected to assigning all of his right, title and interest in the judgment to the Fund. We hold that the applicable statute, Hawaii Revised Statutes (**HRS**) § 444-32 (2013), clearly requires the assignment of all of Hiatt's rights in the judgment to the Fund upon Hiatt's receipt of any payment from the Fund. As the trial court concluded otherwise, this case must be remanded for further proceedings.

Intervenor-Appellant Contractors License Board (the **Board**) appeals from the September 12, 2017 Third Amended Final Judgment (**Third Amended Judgment**), entered by the Circuit Court of the Third Circuit (**Circuit Court**),[1] in favor of Hiatt and against Defendants Sherman Williams, Tiffany Williams, and Kona Sunset Pools & Spas, LLC (collectively, the **Williams Parties**), and the Board. The Board also challenges the Circuit Court's October 8, 2015 Order Granting in Part and Denying in Part Plaintiff Jerry M. Hiatt's Application for Order Directing Payment Out of the Contractors' Recovery Fund (**Order Directing Payment**).

I.   BACKGROUND

On February 24, 2015, Hiatt filed a Complaint against the Williams Parties, alleging that they failed to complete construction and installation of an outdoor pool at Hiatt's residence, and asserting claims for breach of contract and intentional misrepresentation or fraud. In Defendants' Answer to Complaint dated March 5, 2015,[2] and filed pro se on March 10, 2015, the Williams Parties admitted "each and every allegation of the Complaint" and prayed for the entry of a final judgment in favor of Hiatt and against themselves, jointly and severally, for

---

[1]     The Honorable Henry T. Nakamoto presided.

[2]     We note that, according to the Return and Acknowledgment of Service dated March 5, 2015, and filed on March 10, 2015, March 5, 2015, is the same day that Hiatt's attorney personally served the Williams Parties, who were not represented by counsel when they signed Defendants' Answer to Complaint or at any other time in these proceedings.

the relief sought in the Complaint. Pursuant to a Stipulation and Order for Entry of Final Judgment filed on March 17, 2015,[3] the Circuit Court entered judgment in favor of Hiatt and against the Williams Parties, jointly and severally, for $30,361, "reserv[ing] jurisdiction to enter such orders as are necessary as to the Contractors License Board and the Contractors' Recovery Fund."

On May 12, 2015, Hiatt filed a Verified Claim Against All Defendants, seeking to recover from the Fund pursuant to HRS § 444-26 (2013) and HRS § 444-28 (2013).[4] In his Declaration,

---

[3]   The Honorable Ronald Ibarra presided.

[4]   HRS § 444-26 provides, in relevant part:

§ 444-26 **Contractors recovery fund; use of fund; person injured; fees.** (a) The board is authorized to establish and maintain a contractors recovery fund from which any person injured by an act, representation, transaction, or conduct of a duly licensed contractor, which is in violation of this chapter or the rules adopted pursuant thereto, may recover by order of the circuit court or district court of the judicial circuit where the violation occurred, an amount of not more than $12,500 per contract, regardless of the number of persons injured under the contract, for damages sustained by the act, representation, transaction, or conduct. Recovery from the fund shall be limited to the actual damages suffered by the claimant, including court costs and fees as set by law, and reasonable attorney fees as determined by the court; provided that recovery from the fund shall not be awarded to persons injured by an act, representation, transaction, or conduct of a contractor whose license was suspended, revoked, forfeited, terminated, or in an inactive status at the time the claimant entered into the contract with the contractor.

HRS § 444-28 provides, in relevant part:

§ 444-28 **Statute of limitations; recovery from fund.** (a) No action . . . for a judgment which may subsequently result in an order for collection from the contractors recovery fund shall be commenced later than six years from the accrual of the cause of action thereon. When any injured person commences action . . . for a judgment which
(continued...)

3

Hiatt's averments included: (1) his fruitless efforts to obtain payment from the Williams Parties towards the $30,361 awarded to Hiatt; (2) his research and inquiries to determine whether the Williams Parties had any assets to satisfy the judgment against them; (3) his timely notification to the Board of the action against the Williams Parties; and (4) his compliance with all other statutory prerequisites for entry of an order directing payment under HRS § 444-28.[5] On June 4, 2015, Hiatt filed an

---

[4](...continued)
may result in collection from the contractors recovery fund, the injured person shall notify the board in writing to this effect at the time of the commencement of such action. The board shall have the right to intervene in and defend any such action. Nothing in this section shall supersede the statute of limitations as contained in section 657-8.
    (b) When any injured person recovers a valid judgment in any circuit court or district court of the county where the violation occurred against any licensed contractor for such act, representation, transaction, or conduct which is in violation of the provisions of this chapter or the regulations promulgated pursuant thereto, which occurred on or after June 1, 1974, the injured person may, upon the termination of all proceedings, including reviews and appeals in connection with the judgment, file a verified claim in the court in which the judgment was entered and, upon ten days' written notice to the contractors license board, may apply to the court for an order directing payment out of the contractors recovery fund, of the amount unpaid upon the judgment, subject to the limitations stated in this section. Before proceeding against the contractors recovery fund, the injured person must first proceed against any existing bond covering the licensed contractor.

[5] Pursuant to HRS § 444-28(c), upon a hearing on an application for order directing payment, "the injured person shall be required to show":

(1)    The injured person is not a spouse of debtor, or the personal representative of such spouse.
(2)    The injured person has complied with all the requirements of this section.
(3)    The injured person has obtained a judgment as set out in subsection (b) of this section, stating the amount thereof and the amount owing thereon at the date of the application.
(4)    The injured person has made all reasonable searches and inquiries to ascertain whether the judgment debtor is possessed of real or personal property or other
(continued...)

4

Application for Order Directing Payment Out of the Contractors' Recovery Fund (**Application for Order Directing Payment**), requesting an order directing payment from the Fund of the statutory amount of $12,500, plus reasonable attorneys' fees and costs in the amount of $28,809.68 for "having to pursue the lengthy process" of recovering from the Fund.

At the August 6, 2015 hearing on the Application for Order Directing Payment, the Board moved to intervene, and the Circuit Court orally granted the Board's motion. Thereafter, the Board filed a written Motion to Intervene, As of Right. The Circuit Court's written order granting the Board's motion to intervene was entered on September 10, 2015. On August 7, 2015, the Board filed a memorandum in opposition to the Application for Order Directing Payment, arguing that Hiatt's recovery from the Fund should be limited to $12,500, inclusive of any reasonable attorneys' fees and costs, pursuant to HRS § 444-26(a). The

---

[5](...continued)
        assets, liable to be sold or applied in satisfaction
        of the judgment.
   (5)  That by such search the injured person has discovered
        no personal or real property or other assets liable to
        be sold or applied, or that the injured person has
        discovered certain of them, describing them, owned by
        the judgment debtor and liable to be so applied, and
        that the injured person has taken all necessary action
        and proceedings for the realization thereof, and that
        the amount thereby realized was insufficient to
        satisfy the judgment, stating the amount so realized
        and the balance remaining due on the judgment after
        application of the amount realized.

Board also asserted subrogation pursuant to HRS § 444-32 (2013)[6] and requested that - in the event the Circuit Court ordered payment from the Fund - the Circuit Court also order Hiatt to assign to the Board all of his right, title, and interest in the judgment against the Williams Parties.

In reply, Hiatt agreed with the Board that his recovery was limited to $12,500 but argued that: (1) HRS § 444-32 was ambiguous for its failure to address the instant situation, where the amount of the judgment is in excess of the amount paid from the Fund, and that it did not apply in this case; (2) it would be inequitable and a violation of due process for the Board to limit Hiatt's recovery from the Fund to $12,500 while simultaneously requiring assignment to the Board of the full amount of the judgment against the Williams Parties; and (3) assignment of the full amount of the judgment would result in a windfall for the Board and deny Hiatt any future opportunity for recovery on the judgment.

At the August 25, 2015 further hearing on the Application for Order Directing Payment, Hiatt reiterated the

---

[6]     HRS § 444-32 provides:

> **§ 444-32  Subrogation to rights of creditor.** When, upon the order of the court, the contractors license board has paid from the contractors recovery fund any sum to the judgment creditor, the contractors license board shall be subrogated to all of the rights of the judgment creditor and the judgment creditor shall assign all the judgment creditor's right, title and interest in the judgment to the contractors license board and any amount and interest so recovered by the contractors license board on the judgment shall be deposited to the credit of said fund.

arguments in his reply and further argued that assignment to the Board of more than $12,500 of the judgment against the Williams Parties would be an unjust enrichment as well as an unconstitutional taking. The Board argued that the statute plainly does not limit the amount of the assignment of the judgment to the Board and asserted that the unambiguous language of the statute mandated Hiatt's assignment of the full amount of his right, title, and interest in the judgment against the Williams Parties. The Board further contended that Hiatt's refusal to assign all of his rights, title, and interest in the judgment to the Board constituted noncompliance with the statutory prerequisites for recovery from the Fund and thus operated to waive his right to any recovery from the Fund under HRS § 444-33 (2013).[7]

On October 8, 2015, the Circuit Court entered the Order Directing Payment,[8] which included the following:

> 1. The Court finds that [Hiatt] has met all of the statutory requirements pursuant to [HRS] Chapter 444 and is entitled to be awarded the total sum of Twelve Thousand Five Hundred Dollars and No/100 ($12,500.00) from the Contractors Recovery Fund ("Fund") and the Court hereby orders [the Board] to make payment of this sum to [Hiatt] within thirty (30) days of the filing of this Order.
>
> 2. [Hiatt] has withdrawn his request for attorneys' fees and costs, therefore that part of [Hiatt]'s Application is denied.

---

[7]     HRS § 444-33 provides:

> **§ 444-33 Waiver of rights.** The failure of an injured person to comply with all of the provisions of this chapter relating to the contractors recovery fund shall constitute a waiver of any right hereunder.

[8]     The Honorable Melvin H. Fujino presided.

7

> 3. The Court orders that, upon payment from the Contractors Recovery Fund, [Hiatt] shall execute and deliver an assignment of all his right, title and interest in the Judgment up to Twelve Thousand Five Hundred Dollars and No/100 ($12,500.00) and interest to [the Board] to be delivered in exchange for, and contemporaneously with, [Hiatt]'s receipt of the $12,500.00 from the Fund.

Also on October 8, 2015, the Circuit Court entered an Amended Final Judgment (**First Amended Judgment**) from which the Board timely appealed, initiating appellate case CAAP-15-0000802. This court dismissed that appeal for lack of appellate jurisdiction, based on the First Amended Judgment's failure to identify the claims on which the Circuit Court intended to enter judgment. On November 7, 2016, the Circuit Court entered a Second Amended Final Judgment (**Second Amended Judgment**), and the Board again filed a timely notice of appeal, initiating the instant appeal. On September 12, 2017, pursuant to this court's August 23, 2017 Order Temporarily Remanding Case to Circuit Court with Instructions to Enter a Judgment That Resolves All Claims, the Circuit Court entered the Third Amended Judgment.

## II. POINTS OF ERROR

The Board asserts two points of error on appeal,[9] contending that the Circuit Court erred in: (1) ordering Hiatt to assign only part of his right, title, and interest in the judgment against the Williams Parties, contrary to HRS § 444-32;

---

[9] The Board's brief does not comply with Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) as it does not contain a "concise statement of the points of error" and instead includes a "Statement of Points on Which the [Board] Intends to Rely" and a "Statement of Questions Presented for Review." Nevertheless, reading these two sections together, this court can discern: (1) the purported errors committed by the Circuit Court; (2) where in the record the alleged errors occurred; and (3) where in the record the alleged errors were brought to the attention of the court. See HRAP Rule 28(b)(4).

and (2) failing to determine that Hiatt's refusal to assign all of his right, title, and interest in the judgment against the Williams Parties constituted a waiver of Hiatt's rights to any recovery from the Fund.[10]

II. APPLICABLE STANDARD OF REVIEW

The interpretation of a statute is a question of law that this court reviews *de novo*. Fratinardo v. Emps.' Ret. Sys. of Haw., 129 Hawai'i 107, 111, 295 P.3d 977, 981 (App. 2013).

III. DISCUSSION

A. HRS § 444-32

The Board contends that the Circuit Court erred in ordering Hiatt to assign to the Board only a $12,500 portion of his right, title, and interest in the judgment against the Williams Parties. The Board argues that the Circuit Court's interpretation of HRS § 444-32 — as limiting the amount of Hiatt's assignment to $12,500 — does not comport with the plain and unambiguous language of the statute, which mandates the subrogation and assignment of "all" a judgment creditor's right, title, and interest in a judgment.

---

[10] With leave of this court, the Real Estate Commission of the State of Hawai'i (the **Commission**) filed a Brief of *Amicus Curiae* in support of the Board, arguing that: (1) the clear language of HRS §§ 444-32 and 444-33 is virtually identical to the statutory language governing the Real Estate Recovery Fund and thus the legislative history of the Real Estate Recovery Fund is relevant and instructive in this case; (2) the legislative history of the Real Estate Recovery Fund reveals a legislative intent to require full subrogation rights for the Commission and assignment of all right, title, and interest in judgments satisfied by payment from the Real Estate Recovery Fund; (3) refusal to comply with the requirement to assign to the Commission all right, title, and interest in the judgment constitutes a waiver of all rights to recovery from the Real Estate Recovery Fund; and (4) assignment to the Commission of all right, title, and interest in a judgment is not inequitable and does not result in a windfall to the Commission.

We apply the following principles of statutory interpretation:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists[.]
>
> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
>
> [The appellate] court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it [ ] to discover its true meaning. Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.

Fratinardo, 129 Hawai'i at 111, 295 P.3d at 981 (quoting Morgan v. Planning Dep't, Cty. of Kaua'i, 104 Hawai'i 173, 179-80, 86 P.3d 982, 988-89 (2004)).

As noted above, HRS § 444-32 states:

> § 444-32 **Subrogation to rights of creditor.** When, upon the order of the court, the contractors license board has paid from the contractors recovery fund **any sum** to the judgment creditor, the contractors license board shall be subrogated to **all of the rights** of the judgment creditor and the judgment creditor **shall assign all the judgment creditor's right, title and interest in the judgment** to the contractors license board and any amount and interest so recovered by the contractors license board on the judgment shall be deposited to the credit of said fund.

(Emphasis added).

We conclude that the statute is plain and unambiguous and provides that once the Board has paid to a judgment creditor "any sum" from the Fund, this payment has the effect of

10

subrogating the Board to "all of the rights" of that judgment creditor with respect to the judgment. Once payment is made and the subrogation is effected, the statute provides that the judgment creditor *shall* assign *all* of his right, title, and interest in the subject judgment to the Board. Should the Board later recover on the judgment, any such recovery is to be deposited into the Fund. This results in the availability of additional monies in the Fund for recovery by other injured persons in the future, which is consistent with the stated purpose of the Fund of ensuring recovery for persons injured by a duly licensed contractor. See H. Stand. Comm. Rep. No. 98, in 1973 House Journal, at 790; H. Stand. Comm. Rep. No. 170, in 1973 House Journal, at 830; S. Stand. Comm. Rep. No. 590, in 1973 Senate Journal, at 898; S. Stand. Comm. Rep. No. 733, in 1973 Senate Journal, at 935-36.

Contrary to Hiatt's assertions, the statute is not rendered ambiguous by its use of the term "subrogated." The plain meaning of "subrogate" is "[t]o substitute (a person) for another regarding a legal right or claim." Black's Law Dictionary 1654 (10th ed. 2014); id. at 1655 ("Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." (internal quotation marks omitted) (quoting 1 Dan B. Dobbs, Law of Remedies § 4.3(4), at 604 (2d ed. 1993)).

11

The Hawai'i Supreme Court has similarly defined subrogation as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor <u>in relation to the debt</u>." <u>Shimabuku v. Montgomery Elevator Co.</u>, 79 Hawai'i 352, 358, 903 P.2d 48, 54 (1995) (emphasis added) (internal quotation marks omitted) (quoting <u>Peters v. Weatherwax</u>, 69 Haw. 21, 27, 731 P.2d 157, 161 (1987)). "When subrogation occurs, the substitute is put in all respects in the place of the party whose rights he is subrogated." <u>Peters</u>, 69 Haw. at 27, 731 P.2d at 161 (internal quotation marks omitted) (quoting <u>Kapena v. Kaleleonalani</u>, 6 Haw. 579, 583 (Haw. Kingdom 1885)); <u>State Farm Fire and Cas. Co. v. Pac. Rent-All, Inc.</u>, 90 Hawai'i 315, 328, 978 P.2d 753, 766 (1999) ("The word itself comes from the Latin 'subrogare,' which means 'to put in the place of another or to substitute.'") (internal quotation marks omitted) (quoting 4 R. Long, <u>The Law of Liability Insurance</u> § 23.01, at 23-2 (1998)). "In effect, he 'steps into the shoes' of the party." <u>Peters</u>, 69 Haw. at 27, 731 P.2d at 161 (quoting <u>Putnam v. Comm'r</u>, 352 U.S. 82, 85 (1956)).

Giving effect to the plain meaning of "subrogated" and construed within the context of the entire statute, the Legislature clearly intended the Board to "step into the shoes" of a judgment creditor, upon payment from the Fund of <u>any</u> amount to the judgment creditor, and to acquire <u>all</u> of the judgment creditor's rights with respect to any debt still owing on the

judgment.  The statute does not limit the Board's subrogation in proportion to the sum of the payment from the Fund, even though the Legislature could have chosen to do so.[11]  The statutory directive is clear:  once payment is made, the Board is substituted for the judgment creditor and the judgment creditor must assign his or her entire right, title, and interest in the judgment to the Board.  Therefore, we conclude that upon the Board's payment of $12,500 from the Fund to Hiatt, the Board was subrogated to all of Hiatt's rights with respect to the judgment against the Williams Parties.  Consequently, Hiatt is required to assign all his right, title, and interest in that judgment to the Board.

Hiatt asserts that this interpretation of HRS § 444-32 violates the United States and Hawai'i Constitutions as (1) a deprivation without due process of his property interest in the remaining balance on the judgment against the Williams Parties; and (2) a regulatory taking without just compensation.  The Board counters that Hiatt's constitutional arguments fail because, *inter alia*, he "chose to avail himself of the remedies offered in

---

[11]     Jurisdictions with analogous recovery funds that limit the subrogation and assignment of judgments have done so explicitly.  See, e.g., Ala. Code § 34-14A-15(h) (Westlaw through 2019 legislation) ("[T]he board shall be subrogated to all the rights of the judgment creditor, and all his or her rights, title, and interest in the judgment, to the extent of the amount paid from the [fund], shall be assigned to the board.") (emphasis added); Ariz. Rev. Stat. Ann. § 32-1138 (Westlaw through 2019 legislation) ("The state has the right of subrogation to the extent of payments made from the [fund].") (emphasis added); Md. Code Ann., Bus. Reg. § 8-410(a)(1)(i)-(ii) (Westlaw through 2019 legislation) ("After the Commission pays a claim from the Fund . . . the Commission is subrogated to all rights of the claimant in the claim up to the amount paid; [and] the claimant shall assign to the Commission all rights of the claimant in the claim up to the amount paid[.]") (emphasis added).

HRS Chapter 444 and must receive them subject to the statutory conditions." Hiatt's argument is without merit.

As other courts have determined in various contexts, restrictions stemming from *voluntary* participation in a government benefit or recovery program cannot constitute a taking nor do they implicate the infringement of a fundamental right. See, e.g., Bos. Med. Ctr. Corp. v. Sec'y of the Exec. Office of HHS, 974 N.E.2d 1114, 1129 (Mass. 2012) ("[W]here a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and thus there can be no taking.") (citation and internal quotation marks omitted); Meriwether Minn. Land & Timber, LLC v. State, 818 N.W.2d 557, 570 (Minn. Ct. App. 2012) (the purported property right in an uncapped payment from a state forest sustainability fund was "not clearly defined enough in order to be a constitutionally protected property interest"); G. v. Hawai'i, 676 F. Supp. 2d 1046, 1070 (D. Haw. 2009) (state reduction of Medicaid reimbursement rates in managed care program was not a taking under the Fifth Amendment where participation in the program by recipients was voluntary); Franklin Mem'l Hosp. v. Harvey, 575 F.3d 121, 129 (1st Cir. 2009) ("[W]here a property owner voluntarily participates in a regulated program, there can be no unconstitutional taking."); Moore v. Ganim, 660 A.2d 742, 769-70 (Conn. 1995) (statute limiting welfare benefits to nine months in a twelve-month period did not impinge on a fundamental

state constitutional right); Wells v. Panola Cnty. Bd. of Educ., 645 So. 2d 883, 893-97 (Miss. 1994) (state fund limiting the amount of recovery by parties injured in school bus accidents did not constitute a taking or a violation of due process or equal protection); Wolff v. Dir. of Revenue, 791 S.W.2d 390, 392 (Mo. 1990) (en banc) (failure to permit resident shareholders of an S corporation to reduce income from sales totally or partially outside state does not violate commerce clause, due process, or equal protection where the corporation voluntarily elected to assume S corporation status).

Moreover, HRS § 444-32 is a remedial statute, as it provides a remedy or improves or facilitates remedies already in existence for the enforcement of rights and the redress of injuries. Kuhnert v. Allison, 76 Hawaiʻi 39, 42, 868 P.2d 457, 460 (1994) (citing Flores v. United Air Lines, Inc., 70 Haw. 1, 12, 757 P.2d 641, 647 (1988)).[12] By electing to pursue recovery from the Fund, Hiatt utilized the statute to gain the certainty of an expeditious $12,500 payment, i.e., to facilitate or improve the remedy already in existence for the enforcement of his rights with respect to the judgment against the Williams Parties, in light of his futile efforts to collect on the judgment. The

---

[12] In Kuhnert, the supreme court expressly determined that the statute providing for recovery from the Real Estate Recovery Fund is a remedial statute. 76 Hawaiʻi at 42, 868 P.2d at 460. It is clear from the legislative history that the Contractors Recovery Fund was patterned after the Real Estate Recovery Fund; it can therefore similarly be characterized as a remedial statute. H. Stand. Comm. Rep. No. 98, in 1973 House Journal, at 790; H. Stand. Comm. Rep. No. 170, in 1973 House Journal, at 830; S. Stand. Comm. Rep. No. 590, in 1973 Senate Journal, at 898; S. Stand. Comm. Rep. No. 733, in 1973 Senate Journal, at 936.

statute does not require that injured persons pursue recovery from the Fund. Hiatt had the option to pursue recovery from the Williams Parties on the judgment for as long as it remained actionable,[13] but opted instead to seek an order directing payment from the Fund. Hiatt's effective bargaining of his interest in the remaining balance on the judgment (and the corresponding possibility for a future recovery from the Williams Parties) in exchange for a prompt and certain payment of $12,500 does not implicate the constitutional concerns Hiatt asserts nor does it yield an absurd or unjust result.

Accordingly, we conclude that the Circuit Court erred in its interpretation of the plain and unambiguous language of HRS § 444-32 and in ordering Hiatt to assign to the Board only a $12,500 portion of his right, title, and interest in the judgment against the Williams Parties.

B.   Waiver

The Board also contends that the Circuit Court erred in failing to find that Hiatt's refusal to assign all of his right, title, and interest in the judgment against the Williams Parties operated as a waiver of his right to any recovery from the Fund.

Pursuant to HRS § 444-33, "[t]he failure of an injured person to comply with all of the provisions of this chapter

---

[13]   See HRS § 657-5 (2016) ("Unless an extension is granted, every judgment and decree of any court of the State shall be presumed to be paid and discharged at the expiration of ten years after the judgment or decree was rendered. No action shall be commenced after the expiration of ten years from the date a judgment or decree was rendered or extended.").

relating to the contractors recovery fund shall constitute a waiver of any right hereunder." The applicable provisions for recovery from the Fund mandate compliance with several prerequisites in order for an injured person to recover payment. See, e.g., HRS § 444-28(a) (timely notice to the Board of the initial action); HRS § 444-28(b) (filing of a verified claim, followed by ten days' notice to the Board and an application to the court for an order directing payment); HRS § 444-28(c) (listing what "the injured person shall be required to show" in order to prevail on the application for an order directing payment). The waiver provision of HRS § 444-33, when read in context with these requirements for recovery, operates as a bar to recovery from the Fund in the first instance if an injured person fails to comply with these requirements.

Additionally, the Circuit Court did not order Hiatt to assign to the Board *all* of his right, title, and interest in the judgment against the Williams Parties. Thus, a finding that Hiatt "refused" to assign all of his rights in the judgment would have been premature.[14] Accordingly, we conclude that the Circuit Court did not err in declining to find that Hiatt has waived his right to recover from the Fund.

IV. CONCLUSION

For these reasons, we vacate in part the Circuit

---

[14] Similarly, it is premature for this court to comment on the remedies available to the Board if, after the entry of a Circuit Court order to assign to the Board all of his right, title, and interest in the judgment against the Williams Parties, Hiatt refuses to obey such an order.

Court's September 12, 2017 Third Amended Judgment and October 8, 2015 Order Directing Payment, to the extent they order Hiatt to assign his right, title, and interest in the judgment against the Williams Parties only up to the amount of $12,500; the Third Amended Judgment and the Order Directing Payment are otherwise affirmed. This case is remanded to the Circuit Court for further proceedings consistent with this Opinion.

On the briefs:

Ronald T. Michioka,
Diane W. Wong,
Zale T. Okazaki,
(Chong, Nishimoto, Sia,
 Nakamura & Goya),
for Intervenor-Appellant.

Jerry M. Hiatt,
Mahilani E.K. Hiatt,
(Hiatt & Hiatt),
for Plaintiff-Appellee.

Curtis T. Tabata,
(Matsubara, Kotake & Tabata),
for Real Estate Commission of
 the State of Hawaiʻi.